J-S76032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEVEN WAYNE DILLOW, | |
| Appellee | No. 1106 WDA 2014 |

Appeal from the Order Entered June 23, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001162-2013

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 22, 2015**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from a June 23, 2014 order that dismissed, pursuant to 18 Pa.C.S.A. § 110 (the compulsory joinder statute), driving under the influence and related charges filed against Steven Wayne Dillow ("Appellee").  We affirm.

The undisputed factual and procedural history in this case is as follows. On March 13, 2013 at 1:25 a.m., Pennsylvania State Troopers Andrew Prizzi, Robert Broadwater, Marc Ziegler, and Joel Guthrie were dispatched to a residence on Mayflower Drive in South Union Township.  Troopers Prizzi and Broadwater traveled to the scene in the same patrol vehicle while Troopers Ziegler and Guthrie traveled in a separate vehicle.  The troopers were dispatched in response to a report that a male, who arrived at the scene in a silver Ford Focus, was banging on the door and attempting to gain access to

the Mayflower Drive residence. All of the troopers arrived at the scene simultaneously.

Upon arrival, Trooper Prizzi observed Appellee sitting in the driver's seat of the silver Ford Focus. The vehicle was parked on the side of Mayflower Drive with its right tires on the curb and the rest of the vehicle in the road. The engine of the vehicle was running. Trooper Prizzi parked his patrol car in front of Appellee's vehicle and the other patrol car parked behind it. As Trooper Prizzi approached Appellee, he observed that Appellee's eyes were bloodshot and glassy and that a strong odor of alcohol emanated from Appellee's person. After confirming Appellee's identity and the status of his driver's license, Trooper Prizzi asked Appellee to exit the vehicle and the trooper performed certain field sobriety tests upon Appellee.[1] Based upon Appellee's performance, Trooper Prizzi concluded that Appellee was impaired and placed him under arrest for driving under the influence.[2]

While Trooper Prizzi interacted with Appellee, Trooper Broadwater interviewed the residents of the house on Mayflower Drive. Based upon his investigation, Trooper Broadwater came to believe that Appellee, while in an

_____

[1] Trooper Prizzi performed the horizontal gaze nystagmus ("HGN") test and administered a portable breath test. Trooper Prizzi did not perform the one leg stand and the walk and turn test because Appellee advised that he had pre-existing ankle injuries that prevented him from performing those tests.

[2] Subsequent testing revealed that Appellee had a blood alcohol content of .154%.

intoxicated state, created a disturbance within the community when he banged on the door of the Mayflower Drive residence and honked the horn of his Ford Focus.

Trooper Broadwater issued two summary offense citations dated March 13, 2013 that charged Appellee with public drunkenness[3] and disorderly conduct.[4] The citation charging Appellee with public drunkenness alleged that, "[Appellee] did appear in a public place manifestly under the influence of alcohol to a degree that [Appellee] may have endangered himself or other persons or property or annoy persons in the vicinity; to wit: [Appellee] was intoxicated while he was banging on the front of [the residence on] Mayflower causing annoyance to sleeping [residents]." Non-Traffic Citation (Public Drunkenness), 3/13/13. The citation charging Appellee with disorderly conduct alleged that, "[Appellee], with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof did make unreasonable noise; to wit: [Appellee] did bang on the front of [the residence on] Mayflower causing the [residents] alarm and annoyance. [Appellee] also [continually honked] his car horn causing alarm to the resident at [another house on] Mayflower." Non-Traffic Citation (Disorderly

_____

[3] 18 Pa.C.S.A. § 5505.

[4] 18 Pa.C.S.A. § 5503(a)(2).

Conduct), 3/13/13. Appellee pled guilty to both summary charges on March 20, 2014.

On March 26, 2014, the Commonwealth filed a criminal complaint charging Appellee with driving under the influence of alcohol ("DUI") - general impairment,[5] DUI - high rate,[6] careless driving,[7] and restraint systems.[8] Thereafter, Appellee filed an omnibus pre-trial motion alleging that the charges set forth in the criminal complaint were subject to compulsory joinder under 18 Pa.C.S.A. § 110 and, therefore, barred by the prior summary offense prosecutions. The trial court convened a hearing on Appellee's motion on September 24, 2013 and, by order dated June 23, 2014, dismissed the charges against Appellee. This timely Commonwealth appeal followed.

In its brief, the Commonwealth raises the following claim for our review:

> Whether the [trial court] erred in granting [Appellee's] pre[-]trial motion to dismiss when the charges [alleged within the criminal complaint] were not within the jurisdiction of a single court and [Appellee] was not placed in double jeopardy according to **Commonwealth v. Bellezza**, 603 A.2d 1031 (Pa. Super. 1992)[?]

_____

[5] 75 Pa.C.S.A. § 3802(a)(1).

[6] 75 Pa.C.S.A. § 3802(b).

[7] 75 Pa.C.S.A. § 3714(a).

[8] 75 Pa.C.S.A. § 4581(a)(2)(ii).

Commonwealth's Brief at 4.[9]

The Commonwealth advances two arguments in support of its contention that the trial court erred in dismissing DUI and related charges against Appellee. First, the Commonwealth asserts that the DUI charges investigated by Trooper Prizzi did not arise from the same criminal episode as the summary offenses investigated by Trooper Broadwater within the meaning of section 110. In support of this position, the Commonwealth argues that the DUI charges arose from observations made by Trooper Prizzi upon his arrival at the scene while the summary offenses were based upon Appellee's conduct that occurred before the troopers arrived. Second, the Commonwealth maintains that the summary offenses and the DUI charges did not occur within the same judicial district since the former fell within the jurisdiction of the district magistrate and the latter fell within the jurisdiction of the court of common pleas. The Commonwealth cites *Bellezza* as support for both of its contentions. These claims fail.

> Section 110, known as the compulsory joinder rule, bars a subsequent prosecution if each prong of the following test is met:
>
> the former prosecution resulted in an acquittal or conviction; the current prosecution was based on the same criminal conduct or arose from the same criminal episode; the prosecutor in the subsequent trial was aware of the charges before the first trial;

---

[9] The Commonwealth preserved the claim it raises on appeal by including it within a timely filed concise statement of errors complained of on appeal.

and all charges [are] within the same judicial district as the former prosecution.

***Commonwealth v. Reid***, 77 A.3d 579, 582 (Pa. 2013) (citations omitted).

In this appeal, the Commonwealth challenges the trial court's determinations that Appellee met the second and fourth prongs of the test for compulsory joinder.[10] These elements relate to the logical relationship prong and the requirement that all charges emerge from the same judicial district. We address these issues in turn.

When considering the logical relationship prong, our Supreme Court has instructed that we must "look at the 'temporal' and 'logical' relationship between the charges to determine whether they arose from a 'single criminal episode.'" ***Id.*** In assessing the logical relationship between charges, the Supreme Court explained:

> In ascertaining whether a number of statutory offenses are logically related to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds.

---

[10] We need not discuss parts one and three of the compulsory joinder test. Appellee's guilty plea constitutes a conviction for purposes of section 110. ***Commonwealth v. Hockenberry***, 701 A.2d 1334, 1336 (Pa. 1997). Moreover, there is no dispute that the prosecutor was aware of the DUI charges before the initial proceedings, as all the crimes were known to the prosecuting authority at the same time.

*Id.* (citation and internal quotations omitted). Moreover,

> [when considering] the temporal and logical relationship between the criminal acts, [courts must be] guided by the policy considerations that [section] 110 was designed to serve:
>
> to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Id.* at 583 (citation omitted).

Under the circumstances presented in this appeal, we find instructive the Supreme Court's decision in *Commonwealth v. Anthony*, 717 A.2d 1015 (Pa. 1998). In *Anthony*, the defendant committed a series of burglaries with juvenile cohorts. After an investigation, the defendant was initially charged with corruption of minors and related charges. The charges alleged, among other things, that the defendant enticed and encouraged the juveniles to commit thefts and residential burglaries. The defendant pled guilty and was sentenced. Thereafter, the Pennsylvania State Police filed theft and burglary charges against the defendant. The defendant moved to dismiss the charges on grounds of double jeopardy and compulsory joinder, arguing that the second prosecution arose from the same criminal episode that culminated in his prior conviction. Both the trial court and this Court denied relief.

Upon further review, our Supreme Court reversed, concluding that the defendant's subsequent prosecution arose from the same criminal episode as the initial prosecution because all of the criminal acts were temporally and logically related. The Supreme Court held that the prosecutions were temporally related since they essentially covered the same period of time. The Court also found substantial duplication of issues of fact and law because much of the evidence from the first proceeding would be introduced in the second trial. With regard to the duplication of legal issues, the Court noted:

> As for the legal issues, [the defendant]'s first conviction for corrupting the morals of the minors was grounded on his encouraging and enticing the minors to commit burglaries and thefts. The second Information also charges burglary and theft[;] the variation in the form of the criminal charges cannot disguise the commonality of the legal issues within the two informations.

*Id.* at 1019.

After careful review, we are persuaded in this case that a temporal and logical relationship exists between the first and second prosecutions. Thus, the trial court correctly determined that the current prosecution arose from the same criminal episode as the original prosecution. The present criminal complaint charges Appellee with DUI and other offenses arising from events that occurred on March 13, 2013 at or around 1:25 a.m. Appellee argued that those criminal charges arose from the same criminal episode as the summary offenses to which he pled guilty. Like the DUI charges, the

summary offenses with which Appellee was charged stemmed from events that occurred on Mayflower Drive on March 13, 2013 at approximately 1:25 a.m. Hence, the present DUI charges share a direct temporal relationship with the conduct upon which Appellee's summary charges rested.

The Commonwealth argues that the crimes alleged in the criminal complaint are not logically related to Appellee's summary convictions since they do not involve the same conduct. In developing this argument, the Commonwealth stresses that Appellee's summary convictions arose from the drunken disturbance he created before the troopers arrived on scene, as investigated by Trooper Broadwater. By contrast, the Commonwealth notes, the DUI charges (and other crimes) alleged in the criminal complaint stem from observations made by Trooper Prizzi upon his arrival at the Mayflower Drive address. The Commonwealth, however, overlooks the fact that "[a] logical relationship is not conditioned upon the duplication of identical criminal acts." *Id.* Instead, "a logical relationship [may exist] where the sequence of criminal acts reveals a substantial duplication of issues of law and fact." *Id.*

A substantial duplication of issues exists in the present case. While it is conceivable under the facts of this case that the Commonwealth could prove the crimes alleged in the criminal complaint without introducing the testimony of Trooper Broadwater or the witnesses he interviewed, we do not believe that the involvement of two law enforcement officers is sufficient to

preclude compulsory joinder given the substantial overlap of legal issues. Appellee's guilty plea to public drunkenness established that he was manifestly under the influence of alcohol at or around 1:25 a.m. on March 13, 2013. Moreover, Appellee's guilty plea to disorderly conduct established, among other things, that he honked his car horn and, by inference, was in physical control of his vehicle. The criminal complaint alleged that Appellee committed DUI, which required the Commonwealth to prove that Appellee was intoxicated and that he was in control of his vehicle. Given the commonality of the legal issues between the first and second prosecutions, we find that the present charges arose from the same criminal episode as the first set of charges since the criminal acts were temporally and logically related.[11]

The Commonwealth next argues that, although all of Appellee's offenses occurred within Fayette County, the summary offenses and the DUI charges did not occur within the same judicial district since the former fell within the jurisdiction of the district magistrate and the latter fell within the jurisdiction of the court of common pleas. The Commonwealth relies on **Bellezza** to support its position. The Commonwealth's reliance upon

---

[11] Since there were common elements shared between Appellee's summary offenses and the present DUI charges, **Bellezza** does not bar application of the compulsory joinder doctrine in this case. **See Bellezza**, 603 A.2d at 1039 (holding that where there were no common elements between summary offense of disorderly conduct and subsequent DUI charge, double jeopardy did not bar later prosecution).

*Bellezza* is misplaced, however, since that case interpreted a prior version of section 110 which required that all offenses be within the jurisdiction of a single court. That language was amended in 2002 to require that the crimes occur within the same judicial district. Our Supreme Court interpreted the amended language in *Commonwealth v. Fithian*, 961 A.2d 66, 75 (Pa. 2008) stating, "[b]ased upon the plain words of these statutory provisions, we have no problem in concluding the General Assembly intended that, for purposes of the compulsory joinder statute, the phrase 'judicial district' means the geographical area established by the General Assembly in which a court of common pleas is located." Since section 110 no longer includes the language upon which the Commonwealth relies, it is clear that the Commonwealth's contention in this appeal merits no relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/2015